HEMPTON, Appellant, vs. GREEN BAY & WESTERN RAILWAY COMPANY, Respondent.

*December 7, 1915—January 11, 1916.*

*Railroads: Injury to person taking short cut to depot: Unlighted way: Negligence: Proximate cause.*

1. A railway company having provided a safe and suitable way by which its station platform and trains could be reached, no duty rested upon it to light or guard a back driveway which the public had not been, either expressly or impliedly, invited to use and which, though occasionally used in the daytime as a short cut, had not been used or traveled at night.

2. Even if the agent at such station negligently misinformed an intending passenger as to the time when a train would arrive, there was no causal connection between such negligence and an injury sustained by such passenger in attempting to reach the train in the nighttime by an unlighted back way which had not been used for that purpose.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

This action was brought to recover for personal injuries sustained by the plaintiff through the alleged negligence of the defendant in failing to provide suitable and proper approaches and passageways leading to its depot and trains in the village of Arnott, Wisconsin. After the evidence was all in the court directed a verdict for the defendant, and judgment was entered accordingly, from which this appeal was taken.

*D. W. McNamara,* for the appellant.

For the respondent there was a brief by *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *H. O. Fairchild.*

KERWIN, J.   The evidence shows that defendant is a common carrier and that its road extends from Green Bay west through the village of Arnott to the city of Grand Rapids and beyond; that on August 21, 1913, defendant maintained a depot at said village of Arnott; that plaintiff, a traveling salesman, arrived at Arnott about 8 p. m. on said date, bought a ticket for Grand Rapids, and was informed that the train was late; that after plaintiff was so informed he went about a block south of the depot to a saloon run by one Ryan for the purpose of collecting a bill; that after he had been in the saloon a short time he was notified that the train was coming, when he left the saloon and started for the train, it being at the depot and across the main thoroughfare running north and south by the depot.   The depot is on the east side of the main thoroughfare, the main track just south of it, there being also a sidetrack south of and about thirty-five feet distant from the main track.   These two tracks intersect the main thoroughfare running on the west side of the depot and the Ryan saloon.

At the time of the injury there was a driveway from a point about three fourths of a block south from the railroad tracks, extending easterly and at right angles with the main thoroughfare a distance of about fifty feet, thence turning on a curve to the north and extending to the railroad tracks, where there was a cut of about three or three and one-half feet through which the tracks ran.   This driveway had been used by teams in receiving and delivering freight and express, and was to some extent traveled by passengers in the daytime as a short cut in going to and from trains.   Arnott was at the time in question a small village of about 200 inhabitants and had no public lighting system.   The defend-

ant's station and station platform were lighted by kerosene lamps. On the evening in question the train going west stopped so that the rear car was nearly opposite this back way, and the plaintiff, when he came from the saloon, took this way to reach the train, got off the traveled track, fell down the embankment, and received the injuries complained of. This back way was not the passageway provided by the defendant to reach the depot or trains. . It was not lighted and not traveled in the nighttime by passengers in going to or from trains, but occasionally was used in the daytime by passengers as a short cut when the train was in and across the street. The regular passageway used by passengers was along the street on the west side of the depot; and when the train was in there was a level road between the main track and the switch track extending from the main thoroughfare east to the rear end of the train.

There is no evidence sufficient to support a finding that there was any invitation, express or implied, by the defendant to passengers or others to use this way which the plaintiff traveled over on the night in question, hence no duty rested upon the defendant to maintain lights or guard the way.

The evidence shows that no record was maintained in the depot showing the time of arrival of trains. The evidence is also conflicting as to whether the station agent correctly reported the lateness of the train.

The principal points of error argued by counsel for appellant are (1) that there was an invitation extended to the public to use the way which the plaintiff adopted in getting to the train; and (2) that the failure of the defendant to keep a record of the time of arrival of trains in the depot and the negligence of defendant's agent in incorrectly reporting the time of arrival of the train must work a reversal.

The court below in its decision in directing a verdict said:

"On the defendant's motion to direct a verdict: There is to my mind no evidence to sustain a finding that there was any express or implied invitation to the public—which includes this plaintiff—to cross this sidetrack and intervening space between the sidetrack and the main track to board a train standing on the main track. The plaintiff was therefore, at most, a mere licensee at the time he attempted to go from the front door of the Ryan place east and then north across the defendant's property to take the train standing at the depot. The company was therefore in no wise liable to maintain a light or a guard at the place where the plaintiff stepped off down into the cut made for the track of the defendant company.

"As to the negligence of the company's agent in incorrectly reporting the time the train would arrive, assuming he did negligently report it, I hold that, the company having provided a means by which its passengers could reach the depot platform, and also having provided a roadway from the main highway eastward between the switch track and the main track of the railroad, by which a passenger could—though the road was not provided for that purpose—reach a train standing on the main track, there is no causal connection between the fault of the agent and the injury which came to the plaintiff while proceeding from Ryan's place eastward and then northerly to cross the sidetrack to the cars. No one ever had in the nighttime attempted to cross at that place before, so far as the evidence discloses; and it cannot be held that the agent ought reasonably to have foreseen that such an accident as befell the plaintiff would probably follow from his negligence." . . .

We think the court below was right in its conclusions. We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.